NORMA JO KAYE MILLER, Plaintiff-Appellant, *v.* LARRY MORAN *et al.*, Defendants-Appellees.

Fourth District    No. 16717

Opinion filed June 3, 1981.

Johnson, Frank & Frederick, of Urbana (Timothy V. Johnson, of counsel), for appellant.

Ryan, Grabb, Cini & Bennett, of Mattoon (Michael D. Ryan and Kevin Kahl, of counsel), for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Norma Jo Kaye Miller, was the driver of an automobile struck by the automobile driven by Joey L. Booker on June 24, 1978. Plaintiff claims that Booker was at fault, and additionally, was driving while intoxicated. Booker died as a result of the accident. He had been a social guest at a fish fry and was driving home at the time of the collision.

Plaintiff brought suit against defendants Larry Moran, Woodrow Moran, Donald Moran, and David Bathe, the four hosts of the fish fry and owners of the property on which it was held. The complaint was dismissed by the trial court for failure to state a cause of action. The sole issue presented on appeal is whether the complaint, in any of its myriad of alternative allegations, states a cause of action under Illinois common law.

Four counts of the complaint allege that one or more of the defendants were negligent, either (1) in serving or supervising the service of intoxicating liquors to Booker, an already inebriated person, or (2) in serving or supervising the service of intoxicating liquors to Booker with knowledge that he had driven to the fish fry in Allenville from Sullivan, a distance of approximately seven miles, and with the knowledge that he would drive back to Sullivan, or (3) in serving or supervising the service of intoxicating liquors to Booker knowing that he was not sufficiently mature to consume the intoxicating liquors without affecting his ability to drive, or (4) based on defendants' possession and ownership of the land and the foreseeability of harm to others by their service of intoxicating liquor to Booker. Four other counts of the complaint alleged the defendants acted wilfully and wantonly by serving Booker alcoholic liquors. These counts alleged the same acts and omissions by the defendants as the negligence counts, and simply added that these acts and omissions were done with "utter indifference to or conscious disregard for the safety of others." Plaintiff asserted that she was severely injured in the collision and sought $35,000,000 in damages.

Plaintiff seeks recognition by this court of a common law negligence cause of action against social hosts (as distinguished from dramshops) for the service of alcoholic liquor to intoxicated persons who subsequently injure innocent third parties.

The original Dramshop Act of 1872 (1871-72 Ill. Laws 552-56) imposed liability upon dramshops for selling or giving intoxicating liquors which cause the intoxication of persons who subsequently injure third parties. Shortly after the enactment of the Dramshop Act, the supreme court held that no cause of action existed under the Act against one not engaged in the sale of or traffic in intoxicating liquors. (*Cruse v. Aden* (1889), 127 Ill. 231, 20 N.E. 73.) The present act, commonly referred to as

the Dramshop Act, provides a cause of action for damages, in a limited dollar amount, for persons injured by an intoxicated person whose intoxication was "caused" by the dramshop sued. (Ill. Rev. Stat. 1979, ch. 43, par. 135.) Recent appellate court decisions have reaffirmed the holding of *Cruse*, declining to hold social hosts liable under the present Dramshop Act. *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300; *Camille v. Berry Fertilizers, Inc.* (1975), 30 Ill. App. 3d 1050, 334 N.E.2d 205.

Plaintiff attempts to distinguish those cases from the case at bar based upon the legal theory advanced. In the aforementioned cases, plaintiffs sought judicial expansion of the Dramshop Act; in the case at bar plaintiff seeks recognition of a common law cause of action separate and apart from the Dramshop Act.

The historic common rule, adhered to in Illinois is that there is:

> " * * * no remedy for the mere sale of alcoholic liquor to the ordinary man, either on the theory that it was a direct wrong or on the ground that it was negligence, which imposes a legal liability on the seller for damages resulting from intoxication. (*Cruse v. Aden*, 127 Ill. 231; *Howlett v. Doglio*, 402 Ill. 311; *Cole v. Rush* 45 Cal. 2d 345; *Seibel v. Leach*, 233 Wis. 66; *Scott v. Greenville Pharmacy*, 212 A.C. 485; *Anderson v. Diaz*, 77 Ark. 606, *State v. Hatfield*, 197 Md. 249; *Cowman v. Hansen*, 250 Iowa 358.) They point out that the reason generally given for the rule is that the drinking, not the selling, is the proximate cause of the intoxication. (See, *e.g.*, *Cole v. Rush*, 45 Cal. 2d 345; *Joyce v. Hatfield*, 197 Md. 249.)" *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 29-30, 174 N.E.2d 153, 157.

Plaintiff initially argues that this court need not create a common law cause of action, as one has always existed, and, essentially, the Dramshop Act is a limitation on the common law. The supreme court specifically addressed this argument in *Cunningham*, and concluded:

> "The historical background of the act seems to disclaim any notion that it was intended to complement a common-law remedy against the tavern owners and operators. We would be delving in judicial metaphysics if we were to say that the legislature intended to provide a remedy in addition to a common-law remedy which existed but had not as yet been declared by the courts. * * *. The inescapable conclusion is that the legislature did not intend the act to be complementary to a common-law right it knew nothing about, but, on the contrary, intended to create a remedy in an area where it believed none existed." 22 Ill. 2d 23, 28-29, 174 N.E.2d 153, 156.

Alternatively, plaintiff asserts that this court should establish a

common law cause of action because no remedy is presently available against social hosts for third parties injured by intoxicated persons who had been served liquor by the host. To support her request she relies on section 12 of article I of the Illinois Constitution of 1970 which embodies the equitable maxim that "equity will not suffer a wrong without a remedy." Section 12 has consistently been interpreted as an expression of philosophy and not as a mandate for any certain remedy. (*Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 950, 381 N.E.2d 1367, 1374.) Further, in this case there is a remedy available to the injured party, a negligence action against the intoxicated tortfeasor.

The case at bar is similar to *Richardson v. Ansco, Inc.* (1979), 75 Ill. App. 3d 731, 394 N.E.2d 801, in which an injured party sought to recover in a common law negligence action against an employer who allowed an employee to become intoxicated at work, with the knowledge that the employee would drive an automobile home from work. In *Richardson*, the defendant did not serve the alcoholic beverages but merely allowed the intoxication to occur, while in the case at bar defendants allegedly served intoxicating liquor to Booker. We believe, however, that the law announced in *Richardson* is equally applicable to the instant situation:

> "Noncommercial suppliers of liquor are not liable under the Dramshop Act (see Ill. Rev. Stat. 1977, ch. 43, par. 94 *et seq.*), and Illinois courts have consistently refused to enlarge the scope of the Act to impose statutory liability upon anyone not engaged in the liquor business. (*Camille v. Berry Fertilizers, Inc.* (1975), 30 Ill. App. 3d 1050, 334 N.E.2d 205; Annot., 8 A.L.R.3d 1412 (1966).) Furthermore, Illinois has never recognized a common law remedy against the supplier of liquor; the only remedy is that provided by the legislature in the Dramshop Act. *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153." 75 Ill. App. 3d 731, 732, 394 N.E.2d 801, 802.

Plaintiff in the case at bar, like plaintiff in the *Richardson* case, asserts that there is a nationwide judicial trend towards the extension of liability by courts to noncommercial suppliers of liquor. The plaintiff relies on a series of California Supreme Court cases, culminating with *Coulter v. Superior Court* (1978), 21 Cal. 3d 144, 577 P.2d 669, 145 Cal. Rptr. 534. In *Coulter*, the court clearly and unequivocally held that a civil common law cause of action existed against social hosts for furnishing intoxicating liquors to obviously intoxicated persons. Immediately after the *Coulter* decision was announced, the California legislature responded by amending two statutes to specifically abrogate the decision in *Coulter* in favor of the prior common law rule. Cal. Civil Code §1714 (1978); Cal. Bus. & Prof. Code §25602 (1978).

The Wisconsin Supreme Court, in *Olsen v. Copeland* (1979), 90 Wis.

2d 483, 280 N.W.2d 178, was recently asked to create a common law cause of action against taverns for third parties injured by intoxicated persons, in the absence of a dramshop act. The plaintiffs in *Olsen* asserted the existence of a judicial trend toward recognition of common law causes of action in this area. The court, after reviewing the course of events in California, stated:

> "Both the Iowa and Minnesota legislatures moved to nullify those courts' holdings that social hosts could also be held liable. Iowa Code, sec. 123.92 (1979); Minn. Stats., sec. 340.95 (1978). Eight courts have held * * * that the formulation of a remedy belongs with the legislature. *Profitt v. Canez*, 118 Ariz. 235, 575 P.2d 1261 (1977); *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969); *State v. Hatfield*, 197 Md. 249, 78 A. 2d 754 (1951); *Runge v. Watts*, 589 P.2d 145 (Mont. 1979); *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976); *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358, (1969); *Marchiondo v. Roper*, 90 N.M. 367, 563 P.2d 1160 (1977). Six others have concluded that no common-law cause of action exists apart from the provisions of their dramshop acts. *Phillips v. Derrick*, 36 Ala. App. 244, 54 So.2d 320 (1951); *Nelson v. Steffens*, 170 Conn. 356, 365 A.2d 1174 (1976); *Keaton v. Kroger Co.*, 143 Ga. App. 23, 237 S.E.2d 443 (1977); *Edgar v. Kajet*, 84 Misc.2d 100, 375 N.Y.S.2d 548 (1975); *Griffin v. Sebek*, 245 N.W.2d 481 (S.D. 1976); *Parsons v. Jow*, 480 P.2d 396 (Wyo. 1971)." (90 Wis. 2d 483, 492, 280 N.W.2d 178, 182.)

The court in *Olsen* concluded that no nationwide judicial trend was evident on this issue.

In *Olsen*, the court concluded that if any such liability is to be established it should be done by the legislature. That position is in accord with the position Illinois courts have taken on the expansion of the Dramshop Act (*Cunningham; Graham v. General U.S. Grant Post No. 2665, V.F.W.* (1969), 43 Ill. 2d 1, 248 N.E.2d 657) and on expansion of the common law (*Richardson*). Plaintiff asserts that the common law rule of "no liability" was judicially created and therefore can and should be abolished by the judiciary. Plaintiff argues that since the implementation of the common law rule the number of traffic fatalities caused by intoxicated drivers has increased astronomically and that such a change in circumstances has made the common law rule an anachronism. On that account, we agree with the court's statement in *Olsen*:

> "A change in the law which has the power to so deeply affect social and business relationships should only be made after a thorough analysis of all the relevant considerations. * * * The type of analysis required is best conducted by the legislature using

all of the methods it has available to it to invite public participation." 90 Wis. 2d 483, 491, 280 N.W.2d 178, 181.

Another factor which compels us to exercise judicial restraint is that any common law liability we create would be unlimited. Dramshops are subject to civil liability for each occurrence which cannot exceed $35,000. (Ill. Rev. Stat. 1979, ch. 43, par. 135.) Thus, we would be exposing persons who make no profit from their service of alcohol to much greater liability than the legislature has seen fit to expose dramshops.

Further, as we have noted above, the problem is not one of adequate remedies for an injured plaintiff, as an injured person can sue the intoxicated driver. We believe that whether to provide additional remedies is a legislative rather than judicial question.

Affirmed.

MILLS and WEBBER, JJ., concur.