LEONARD LOWE, Plaintiff-Appellant, v. JULIE RUBIN et al., Defendants.—
(JULIE RUBIN, Defendant-Appellee.)

First District (5th Division)    No. 80-991

Opinion filed July 17, 1981.

Harvey P. Muslin, Howard B. Pitrack, and Carl F. Schroeder, all of Chicago (David A. Novoselsky, of counsel), for appellant.

Leo M. Tarpey, Jr., of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Mark Chemers and Joseph B. Lederleitner, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal presents the question as to whether Illinois recognizes a common law negligence action against a noncommercial supplier of alcoholic liquor.

In count II of plaintiff's third amended complaint, it is alleged in substance that defendant served alcoholic liquor to the guests at a party in her home—including defendant Glen Begouin, a minor, who became intoxicated and struck plaintiff, causing the loss of his sight in one eye. Additionally, this count alleged that Rubin knew when she served Begouin that "he was an individual of violent propensities likely to injure others when intoxicated."

Rubin moved to dismiss count II, asserting that it failed to state a cause of action,[1] and in its order granting the motion the trial court also denied a request of plaintiff to further amend his complaint on the basis that no facts could be asserted to state a cause of action for dispensing liquor by a private individual. This appeal followed.

OPINION

In the consideration of a motion to dismiss, the allegations of fact in the complaint are taken as true (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849) and, in determining the propriety of such a dismissal, we are concerned only with the questions of law presented by the pleadings (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538).

The question of law presented by the parties here is whether a noncommercial supplier (as opposed to a dramshop) can be held liable under common law negligence for the service of alcoholic liquor to an intoxicated minor who subsequently injures a third party.

Historically, our supreme court has recognized that the common law gave no cause of action in negligence for the mere sale or gift of intoxicating liquor to the ordinary man. (*Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.) To the same effect are *Schulte v. Schleeper* (1904), 210 Ill. 357, 71 N.E. 325, and *Meidel v. Anthis* (1874), 71 Ill. 241, wherein the court stated that the Dramshop Act conferred remedies unknown to the common law against persons who may have caused the intoxication. As stated in *Cruse v. Aden* (1889), 127 Ill. 231, 234, 20 N.E. 73, 74:

> "It was not a tort, at common law, to either sell or give intoxicating liquor to 'a strong and able-bodied man,' and it can be said safely, that it is not anywhere laid down in the books that such act was ever held, at common law, to be culpable negligence, that would impose legal liability for damages upon the vendor or donor of such liquor."

More recently, in *Miller v. Moran* (1981), 96 Ill. App. 3d 596, 421 N.E.2d 1046, this court held a social host should not be held liable in

---

[1] Count I is directed against Begouin and remains pending in the trial court.

negligence to a third party injured when the automobile she was driving was struck by one driven by an intoxicated person who had been served liquor by the host. The court stated:

"[I]f any such liability is to be established it should be done by the legislature. That position is in accord with the position Illinois courts have taken in the expansion of the Dramshop Act (*Cunningham [v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153]; *Graham v. General U.S. Grant Post No. 2665, V.F.W.*, (1969), 43 Ill. 2d 1, 248 N.E.2d 657) and on expansion of the common law (*Richardson [v. Ansco, Inc.* (1979), 75 Ill. App. 3d 731, 394 N.E.2d 801]). * * * [W]e agree with the court's statement in *Olsen [v. Copeland]*:

'A change in the law which has the power to so deeply affect social and business relationships should only be made after a thorough analysis of all the relevant considerations. * * * The type of analysis required is best conducted by the legislature using all of the methods it has available to it to invite public participation.' 90 Wis. 2d 483, 491, 280 N.W.2d 178, 181.

Another factor which compels us to exercise judicial restraint is that any common law liability we create would be unlimited. Dramshops are subject to civil liability for each occurrence which cannot exceed $35,000. (Ill. Rev. Stat. 1979, ch. 43, par. 135.) Thus, we would be exposing persons who make no profit from their service of alcohol to much greater liability than the legislature has seen fit to expose dramshops.

Further, as we have noted above, the problem is not one of adequate remedies for an injured plaintiff, as an injured plaintiff can sue the intoxicated driver. We believe that whether to provide additional remedies is a legislative rather than judicial question." 96 Ill. App. 3d 596, 600-01.

Plaintiff, however, refers us to several cases in support of his position, first pointing to *Colligan v. Cousar* (1963), 38 Ill. App. 2d 392, 187 N.E.2d 292, where it was held that injury resulting from acts such as those of Rubin in the case before us was foreseeable and thus actionable negligence. In *Colligan*, it was alleged that defendants, Illinois tavern owners, allegedly sold liquor to intoxicated persons who then drove to Indiana where they were involved in a collision with plaintiff's car. The court, after recognizing the holding in *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153, that the Dramshop Act provides the only remedy against tavern operators and owners where a person is injured by an intoxicated person or in consequence of intoxication, concluded that the acts of the defendant would have given rise to a common law action if there had been no Dramshop Act in existence.

The *Colligan* court, however, in reaching this conclusion, made no reference to the contrary statements of our supreme court in *Howlett v. Doglio, Schulte v. Schleeper, Cruse v. Aden,* and *Meidel v. Anthis.* We note also that subsequent to *Colligan,* in *Graham v. General U.S. Grant Post No. 2665, V.F.W.,* which involved the sale of liquor in an Illinois tavern to one Schlicker, who allegedly became intoxicated and was later involved in a Wisconsin automobile accident in which plaintiff, an Illinois resident, was injured, it was held that there was no common law action against the tavern operator and owners of the tavern premises. Moreover, the defendants in *Colligan* were commercial vendors, whereas, in the instant case, Rubin was a social host, and concerning this distinction it has been written:

> "The historic rationale of the dram shop acts was, theoretically, to shift the cost of damage or injury to the commercial vendor who was considered to have a greater capacity to absorb the cost. The vendor may be required by statute to post bond or carry insurance against the damage. The social host, on the other hand, receives no pecuniary gain for providing alcoholic beverages to his guest and will have to personally absorb the cost of insurance or other security." DeMoulin & Whitcomb, *Social Host's Liability in Furnishing Alcoholic Beverages,* 27 Fed'n Ins. Counsel Q. 347, 357 (1977).

Plaintiff also relies upon two California cases, *Coulter v. Superior Court* (1978), 21 Cal. 3d 144, 577 P.2d 669, 145 Cal. Rptr. 534, and *Walters v. Sloan* (1975), 49 Cal. App. 3d 643, 122 Cal. Rptr. 623. Those cases held that a cause of action existed in California against a social host for furnishing alcoholic liquor to an intoxicated person. Subsequent to those decisions, however, the California legislature by statutory amendments barred any such action, and the amendments were found to be constitutional in *Cory v. Schierloh* (1981), ___ Cal. 3d ___, 629 P.2d 8, 174 Cal. Rptr. 500, which was an action against a host by a minor for injuries he had received after becoming intoxicated at a party when he lost control of his automobile while attempting to drive home. The court stated the legislature's decision to limit the liability of a provider of alcoholic beverages "may have been based upon a premise that it is unfair to require the provider (and his insurer) to share both the supervisory responsibility and the legal blame with the consumer, whose voluntary consumption of alcoholic beverages is perhaps the more direct and immediate cause of any consequent injuries. We deem such a determination to be a rational one. * * * The Legislature also might reasonably have assumed that the imposition of sole and exclusive liability upon the consumer of alcoholic beverages would encourage some heightened sense of responsibility in the drinker for his acts, thereby ultimately reducing

the frequency of alcohol-caused injuries." (___ Cal. 3d ___, ___, 629 P.2d 8, 13, 174 Cal. Rptr. 500, 505.) The court then concluded that the amendments were founded upon a possible rational basis and reasonably related to a legitimate state purpose.

While plaintiff also refers us to *Wiener v. Gamma Phi Chapter* (1971), 258 Or. 632, 485 P.2d 18, which recognized that a social host may be held liable for allowing another to become dangerously intoxicated, we note that a significant number of jurisdictions have taken a contrary position. This court, in *Miller v. Moran*, quoted from *Olsen v. Copeland* (1979), 90 Wis. 2d 483, 492, 280 N.W.2d 178, 182, as follows:

> " 'Both the Iowa and Minnesota legislatures moved to nullify those courts' holdings that social hosts could also be held liable. Iowa Code, sec. 123.92 (1979); Minn. Stats., sec. 340.95 (1978). Eight courts have held that no common-law cause of action exists and that the formulation of a remedy belongs with the legislature. *Proffit v. Canez*, 118 Ariz. 235, 575 P.2d 1261 (1977); *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969); *State v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951); *Runge v. Watts* 589 P.2d 145 (Mont. 1979); *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976); *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969); *Marchiondo v. Roper*, 90 N.M. 367, 563 P.2d 1160 (1977). Six others have concluded that no common-law cause of action exists apart from the provisions of their dram shop acts. *Phillips v. Derrick*, 36 Ala. App. 244, 54 So. 2d 320 (1951); *Nelson v. Steffens* 170 Conn. 356, 365 A.2d 1174 (1976); *Keaton v. Kroger Co.*, 143 Ga.App. 23, 237 S.E.2d 443 (1977); *Edgar v. Kajet* 84 Misc. 2d 100, 375 N.Y.S. 2d 548 (1975); *Griffin v. Sebek*, 245 N.W. 2d 481 (S.D. 1976); *Parsons v. Jow*, 480 P. 2d 396 (Wyo. 1971).' " 96 Ill. App. 3d 596, 600.

In accordance with the reasoning of *Miller v. Moran* with its supporting authority cited above, and considering the public and social requirements expressed therein as well as in *Cory v. Schierloh* and in the writing of DeMoulin & Whitcomb, we decline to adopt the holding of *Wiener v. Gamma Phi Chapter*. We are also in agreement with the statements in the cases cited that the imposition of liability upon a social host in giving alcoholic liquor to an intoxicated person should be the function of the legislature rather than the judiciary. In the light of this holding, we additionally find that the trial court properly denied plaintiff's motion to further amend count II.

For the reasons stated, the dismissal of count II is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.