705 P.2d 945

Gary **KECKONEN** and Faye Keckonen, Plaintiffs/Appellants,

v.

James J. **ROBLES** and Arsinia Robles, husband and wife; Michael Slepko and Ann Slepko, husband and wife, doing business as Rusty Nail Tavern; Vincent Russo, a single man; Mary Stone and Wayne Stone, wife and husband; Neil's Detroit Diesel, Inc., an Arizona Corporation; James L. Bennett and Mary H. Bennett, husband and wife; Ralph P. Casillas and Diana K. Casillas, husband and wife; Jim Click Ford, an Arizona corporation; Ford Motor Company, a corporation, Defendants/Appellees.

No. 2 CA–CIV 5280.

Court of Appeals of Arizona, Division 2, Department A.

April 24, 1985.

Review Denied Aug. 27, 1985.

Les Gilbertson, Tucson, for plaintiffs/appellants.

Lieurance, Wright & Davis, P.C. by George S. Wright and Kevin D. Ray, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Judge.

In *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983) the Arizona Supreme Court held that tavern owners and other licensed sellers of intoxicating liquor may be held liable when they sell liquor to an intoxicated customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may be injured either on or off the premises. In this case we are asked to extend this liability to persons other than licensed sellers of liquor.[1] We decline to do so and hold that the trial court did not err in granting summary judgment to defendants Neil's Detroit Diesel, Inc. (Neil's), James L. Bennett and Mary H. Bennett, husband and wife, and Ralph P. Casillas and Diana K. Casillas, husband and wife.

The facts considered in the light most favorable to plaintiffs are as follows. For about ten or fifteen years some of the employees of Neil's have engaged in a check pool every payday. They each contribute a dollar to the pool and the one who has the highest number on his payroll check buys a case of beer for the others at a social gathering that takes place on the Neil's premises after working hours.

On September 15, 1983, the employees in the pool met after working hours, at about 3:30 p.m. The business was closed and the entrance gate to the premises was locked. An employee named Neil Burgess had won the pool and had purchased the case of beer. Although the evidence is not crystal clear, it can be inferred that defendants James Bennett, the Tucson branch manager of Neil's, and Ralph Casillas, the Tucson branch service manager, had contributed money to the pool. The defendant Robles was also present, and all of the previously mentioned persons, at one time or another, took part in a discussion which the main group of employees was having concerning a work-related problem.

At approximately 7 p.m. the gathering broke up. Defendants Ralph Casillas and James Robles, along with another employee, went from Neil's to the Rusty Nail Tavern where they drank more beer. Robles left the tavern at approximately 8:30 p.m. in his car and at 9 p.m. drove across the center line of a two-lane highway and collided with two on-coming cars, causing serious injury to plaintiff Faye Keckonen. Robles was then taken to the hospital for treatment and a sample of his blood was analyzed. It contained 0.33 per cent alcohol. The next day Robles told a Pima County deputy sheriff that he had consumed three or four beers at Neil's and three more beers at the tavern.

The first experiment with extending the liability of the tavern keeper to non-licensees, or the social host, occurred in California in the case of *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978). The court held that under modern negligence law a social host who furnishes alcoholic beverages to an obviously intoxicated person, under circumstances which create a reasonably foreseeable risk of harm to others, may be held legally accountable to those third parties who are injured when that harm occurs. This experiment was very short-lived. Within five months, the wrath of God, in the form of the California

---

1. This case does not involve the liability of a non-licensee who sells or furnishes liquor to an intoxicated minor in violation of state liquor laws. For cases dealing with that situation see Annot. 53 A.L.R.3d 1285 (1973).

Legislature, struck, expressly abrogating the *Coulter* holding by amending § 1714 of the California Civil Code. Not only did the legislature expressly abrogate the opinion in the *Coulter* case but it also expressly abrogated the holding in *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971), which held, similar to our case of *Ontiveros v. Borak,* supra, that tavern owners could be liable.

Except for the State of New Jersey, all the state courts which have considered the question of extending the liability of the social host have declined to do so. See *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983) and the cases cited therein.[2] One of the reasons given for declining to extend liability is that in the case of an ordinary able-bodied person it is the consumption of alcohol, rather than the furnishing of alcohol, which is the proximate cause of any subsequent occurrence. See *Klein v. Raysinger,* supra. In those states in which there is a dramshop act, the courts have refused to extend liability to the social host on the ground, inter alia, that any extension of the dramshop act should be done by the legislature. See *Lowe v. Rubin,* 98 Ill.App.3d 496, 53 Ill.Dec. 919, 424 N.E.2d 710 (1981); *Miller v. Moran,* 96 Ill.App.3d 596, 52 Ill.Dec. 183, 421 N.E.2d 1046 (1981). In *Settlemyer v. Wilmington Veteran's Post No. 49, American Legion, Inc.,* 11 Ohio St.3d 123, 464 N.E.2d 521 (1984), the court gave four reasons why it refused to extend liability to the social host. First, the commercial proprietor has a proprietary interest and profit motive and should be expected to exercise greater supervision than the non-commercial social setting. Second, the person in the business of selling and serving alcohol is usually better organized to control patrons and has the financial wherewithal to do so. Third, by virtue of experience a commercial proprietor is more familiar with his customers and their habits and capacities. Fourth, since the ratification of the Twenty-first Amendment to the United States Constitu-

tion virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature and any policy modifications which are designed to encompass the potential liability of social providers of intoxicating beverages should be left to the sound discretion of the legislature.

In *Miller v. Owens-Illinois Glass Company,* 48 Ill.App.2d 412, 199 N.E.2d 300 (1964) the court noted that to extend the dramshop act rationale to social hosts would have the consequence that providing a social drink to a neighbor or friend would become a hazardous act and open the floodgates of litigation. See also the concurring opinion in *Ross v. Ross,* 294 Minn. 115, 200 N.W.2d 149 (1972).

The distinction between the social host and the tavern owner was recognized in the case of *Lowe v. Rubin,* supra, where the court quoted from DeMoulin & Whitcomb, Social Host's Liability in Furnishing Alcoholic Beverages, 27 Fed'n Ins. Counsel Q. at 357 (1977), where the author states:

"The historic rationale of the dram shop act, was, theoretically, to shift the cost of damage or injury to the commercial vendor who was considered to have a greater capacity to absorb the cost. The vendor may be required by statute to post bond or carry insurance against the damage. The social host, on the other hand, receives no pecuniary gain for providing alcoholic beverages to his guest and will have to personally absorb the cost of insurance or other security." 53 Ill.Dec. at 922, 424 N.E.2d at 713.

In *Miller v. Moran,* supra, the court concluded that the situation called for it to exercise judicial restraint, stating that a change in the law which has the power to so deeply affect social and business relationships should be made only after a thorough analysis of all the relevant considerations. The court added that the type of analysis required is best conducted by the

---

**2.** In addition to Pennsylvania, the states which have declined to extend liability are Alaska, Connecticut, Illinois, Michigan, Minnesota, Montana, Nevada, New York, Tennessee and Washington.

legislature using all of the methods it has available to it to invite public participation.

Any thoughts of judicial restraint were not visible in the New Jersey decision of *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984). There the court found that the extension of liability to the social host fit the negligence model, finding foreseeability, proximate cause and duty. In deciding the question of duty, the court stated that whether a duty exists is ultimately a question of fairness, and it determined that it was fair to extend liability to the social host because of the thousands of deaths caused each year by drunk drivers. The court, recognizing that there was no precedent anywhere in the country to support its extension of liability, held that its decision was to be prospective only, so that homeowners who were social hosts could increase their policy limits if they wanted to do so and apartment dwellers could obtain liability insurance. So far, the State of New Jersey stands alone as the only state which has extended liability to the social host.

■ Having reviewed the other decisions in the country, we arrive at our own case of *Ontiveros v. Borak*, supra, which plaintiffs contend supports the extension of liability to the social host. In *Ontiveros v. Borak*, supra, the court held that a plaintiff may maintain an action in negligence if he proves (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk; (2) a failure on the defendant's part to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury, and (4) the actual loss or damage. The court also correctly concluded that the common law rule of non-liability for the tavern owner based on lack of proximate cause was no longer viable. The court found both a common law and a statutory duty on the part of the tavern keeper not to furnish intoxicants to customers who are already intoxicated, but it specifically did not reach the social host problem:

"We do not reach the social host-guest problem and will not speculate on the question of whether a social host may be under a lesser duty for protection of the public than a licensed seller of liquor." 136 Ariz. at 511, 667 P.2d at 211.

The footnote to the above quote states:

"We deal here with the obligation of a licensee to help control the conduct of others who are patrons of his establishment. Such duties are recognized where a 'special relationship exists between the actor and the third person.' Restatement (Second) of Torts, *supra*, § 315. The existence of such a special relationship may well be predicated upon the governmental interest which permits the statutory requirement of licensing. Whether such a special relationship exists in a host-guest context is a question which we do not reach." (Emphasis in original) 136 Ariz. at 511, 667 P.2d at 211.

With all due respect, we believe that the dictum in the footnote represents an incorrect analysis of both the tavern keeper-client situation and the social host-guest situation in the context of liability for furnishing intoxicants to an already-intoxicated person. Such conduct, the furnishing of the intoxicants, constitutes affirmative conduct—it is *misfeasance*. The Restatement (Second) of Torts § 315 (1965), mentioned in the footnote, and the following sections of the Restatement up to and including § 320 concern *nonfeasance*, the failure to act, and are inapplicable to the problem at hand.

■ This brings us to the question upon which any decision to impose liability upon the social host must rest. Is there any duty on the part of the social host, recognized by the law, not to furnish intoxicating beverages to an intoxicated guest in order to protect a person who might be injured by the guest's drunk driving after leaving the premises? The decision by a court to impose liability is a policy decision. As stated in Prosser and Keaton on Torts

"... No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." W. Prosser, W. Keaton, Prosser on the Law of Torts, 359 (5th ed. 1984).

We do not believe that reasonable persons would extend to the social host the liability imposed upon the tavern keeper. The consequences of imposing such a duty are economically and socially staggering. Considering the public and social requirements, the consequences of extending liability, and the reasons for not extending it mentioned in the cases which we have previously cited and in the article by DeMoulin and Whitcomb (except for the proximate cause argument), we decline to extend liability to the social host.[3]

Affirmed.

BIRDSALL, P.J., and FERNANDEZ, J., concur.

---

**3.** For the purposes of this opinion we have assumed but have not decided that there could have been some liability on the part of Neil's as the owner of the premises and have further assumed but not decided that there was sufficient proof that Robles was intoxicated when he left his employer's premises to go to the Rusty Nail Tavern.