396 S.E.2d 153

Franklin D. OVERBAUGH, Administrator of the Estate of Elizabeth Ann Overbaugh, Franklin Overbaugh, Tony Overbaugh, Stacey Overbaugh and Kevin Overbaugh, Infants Who Sue By and Through Their Father and Next Friend, Franklin D. Overbaugh, and Franklin D. Overbaugh, Individually, Plaintiffs

v.

Pricilla McCUTCHEON, Executrix of the Estate of Donald J. McCutcheon, Brady Cline Coal Company, a Corporation, Margaret Peerless Coal Company, Gauley Coal Sales Company, Holly Coal Company; and Jack Cline, Defendants.

No. 19195.

Supreme Court of Appeals of West Virginia.

July 11, 1990.

James M. Barber, DiTrapano & Jackson, Charleston, for Franklin D. Overbaugh et al.

Timothy R. Ruckman, Summersville, for Pricilla McCutcheon.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Coal Companies.

WORKMAN, Justice:

This action is before the Court upon certified questions from the Circuit Court of Nicholas County. The questions certified by the lower court include:

(1) Whether a host who gratuitously serves liquor to an adult social guest knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by intoxication?

(2) Whether an employer who gratuitously serves liquor to an adult employee at an employer sponsored party and thereafter, due to the employee's incapacitation, exercises control over the employee, has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from operating a motor vehicle, causing an unreasonable risk or harm to others?

The lower court answered both the questions in the affirmative. Upon review of the arguments of the parties and all the matters of record submitted before the Court, we disagree with the lower court's answers to both certified questions.

This action involves an automobile accident which occurred on December 19, 1985, on U.S. Route 19 near Summersville, West Virginia. Donald J. McCutcheon was operating a 1985 Chevrolet pickup truck southbound on U.S. 19, and Elizabeth Ann Overbaugh was operating a 1981 Oldsmobile Cutlass northbound on U.S. Route 19. The truck driven by McCutcheon allegedly swerved across the center line of the road and struck the vehicle driven by Overbaugh. As a result of the accident, McCutcheon and Overbaugh died. Additionally, the plaintiffs, Franklin Overbaugh, Jr., Tony Overbaugh, Stacey Overbaugh and Kevin Overbaugh, all passengers in Elizabeth Overbaugh's vehicle, received personal injuries.

Prior to the accident on December 19, Brady Cline Coal Company, Gauley Coal Sales Company and Holly Coal Company hosted a Christmas party for employees and friends at the corporate offices located near Summersville, West Virginia. It is undisputed that alcohol was served, but it was neither sold nor served by a bartender to any of the persons attending the party, rather it was available on a self-serve basis.

Donald McCutcheon did attend the company Christmas party, but it is disputed by the parties whether he was an employee of any of the companies involved on the date of the accident.[1] That issue, however, is not before this Court.

---

1. According to the deposition of Jack Cline, McCutcheon was not employed by any of the

It was alleged that McCutcheon did consume alcohol while at the party and was apparently noticeably drunk. It was further stipulated between the parties for the purposes of summary judgment that the defendant, Jack Cline, knew that Donald McCutcheon was intoxicated and knew McCutcheon intended to operate a motor vehicle. In fact, Jack Cline testified during a pre-trial deposition that he told McCutcheon not to drive but to stay put until either Cline or one of his sons could drive him home. Cline then left McCutcheon and went back to work at a different site. According to Cline's deposition, both he and his son again spoke with McCutcheon on the telephone while they were still at the work site and requested of McCutcheon that he wait for them at the party so that Cline or his son could take him home. McCutcheon told Cline that he would wait; however, when Cline returned to the party, everyone (including McCutcheon) had left. After leaving the party on his own volition, McCutcheon was involved in the accident. His blood alcohol level was determined to be .22% at the time of his death.

Plaintiffs brought action for wrongful death and personal injuries against the defendants. The defendant coal companies and Jack Cline filed a motion for summary judgment, claiming that they owed no duty to the plaintiffs and were not responsible for McCutcheon's conduct. The circuit court denied defendants' motion, holding that there were certain duties imposed on defendants, the breach of which could result in liability on the part of the defendants to the plaintiffs.

## SOCIAL HOST LIABILITY

The first certified question to be addressed is whether an injured third party can recover against a social host who gratuitously serves liquor to a social guest knowing not only that the guest is intoxicated but also that he intends to operate a motor vehicle when the third party's injuries occur as a result of the negligent operation of the vehicle by the guest while intoxicated. The plaintiffs contend that the trial court was correct in ruling that a social host could be liable for the negligent conduct of a guest who becomes intoxicated at the host's party and then causes injury while driving. The defendants, on the other hand, contend that a host who gratuitously serves or permits alcoholic beverages to be consumed by an adult social guest is not subject to "dram shop" type liability in West Virginia and further, that in the absence of legislation, a clear majority of jurisdictions which have been faced with this same issue have refused to impose liability on a social host based upon principles of common law negligence.

There are two primary theories under which courts have imposed social host liability. The first is in upholding a statute enacted by the legislature and the second is in finding liability under common law negligence principles.

■ Currently, in West Virginia there is no "dram shop"[2] or social host liability

defendant coal companies. The records submitted at the deposition included an I.R.S. Form 1099–Misc. which indicated that McCutcheon had received $4,000.00 from Holly Coal Company during 1985. Additionally, two checks were submitted which had been issued by Holly Coal Company on October 11, 1985, and October 22, 1985, for $200.00 and $500.00 respectively. Cline testified that the money paid by Holly Coal to McCutcheon was for contract labor which entailed moving a warehouse.

The deposition taken of Pricilla Norene Tinnil McCutcheon, the widow of Donald McCutcheon, contained testimony in response to whether her husband was employed in December 1985, that "he was more or less self-employed because not to my knowledge was he employed by any certain company. But he worked around the

mines doing different things. So that's what he was doing at that time." Additionally, in response to who McCutcheon was working for on the day he died, she testified that "I don't know the name, but I know that he was up around the mine at Jack Cline's. But I couldn't tell you, you know, say a company name or anything because we did our own taxes and all, you know."

2. "Dram shop" legislation refers to the imposition of liability on the sellers of intoxicating liquors (which may or may not include beer), "when a third party is injured as a result of the intoxication of the buyer where the sale has caused or contributed to such intoxication...." Black's Law Dictionary 444 (5th ed. 1977).

Found in 1872–73 W.Va. Acts Ch. 99, an act which was repealed in 1935 W.Va. Acts Ch. 4,

legislation.[3] As a matter of fact, the only statute found in West Virginia even arguably pertinent to this case involves the sale of alcohol by a vendor. Specifically, W.Va. Code § 60–3–22 (1986) provides that:

Alcoholic liquors shall not be sold to a person who is:

(1) Less than twenty-one years of age;

(2) An habitual drunkard;

(3) Intoxicated;

(4) Addicted to the use of any controlled substance as defined by any of the provisions of chapter sixty-a [§ 60A–1–101 et seq.] of this code; or

(5) Mentally incompetent.

Clearly, the legislature did not intend for this statute to apply to anyone except sellers of alcoholic beverages.[4]

Consequently, in the absence of legislation, the only other way to impose social host liability would be by utilizing a common law negligence approach. The plaintiffs argue that this Court should establish a new cause of action under our analysis in *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987) and using the logic of the holding of the New Jersey Supreme Court in *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984). The defendants, however, argue that we should follow the majority of jurisdictions in refusing to impose social host liability based on principles of common law negligence.[5]

■ This Court has previously held even prior to *Price* that " '[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm.' Syllabus Point 2, *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983)." Syl.Pt. 10, *Price*, 177 W.Va. at 593–594, 355 S.E.2d at 382. In *Price*, based on this principle established in *Rob-*

was West Virginia's version of "dram shop" legislation. 1872–73 W.Va. Acts Ch. 99(6), in part, indicated that

6. Every husband, wife, child, parent, guardian, employer, or other person who shall be injured in person or property, or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, severally or jointly, against any person who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons, ...

3. For an example of current social host liability legislation, *see* N.J.Rev.Stat.Ann. §§ 2A:15–5.5–2A:15–5.8 (West 1988). Additionally, 1872–73 W.Va. Acts Ch. 99 could have been construed as social host liability legislation when it was in effect since it provided for liability when liquor was sold or given to a person thereby causing intoxication.

4. Theoretically, if this statute read "[a]lcoholic liquors shall not be sold or given to a person ..." and a violation of the statute occurred, then liability may have been found to have existed, since W.Va.Code § 55–7–9 (1923) provides that "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

Further, *see Casselberry v. Dominick*, 143 A.D.2d 528, 533 N.Y.S.2d 31 (1988), *appeal de-nied*, 73 N.Y.2d 706, 536 N.E.2d 628, 539 N.Y.S.2d 31 (1989) where the Supreme Court of New York found that where beer was provided on a self-serve basis, there was no sale of alcohol under dram shop legislation. *Casselberry*, 533 N.Y.S.2d at 32.

5. *See Cartwright v. Hyatt Corp.*, 460 F.Supp. 80 (D.D.C.1978); *DeLoach v. Mayer Electric Supply Co.*, 378 So.2d 733 (Ala.1979); *Keckonen v. Robles*, 146 Ariz. 268, 705 P.2d 945 (1985); *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Kowal v. Hofher*, 181 Conn. 355, 436 A.2d 1 (1980); *Wright v. Moffitt*, 437 A.2d 554 (Del. 1981); *United Services Auto Ass'n v. Butler*, 359 So.2d 498 (Fla.Dist.Ct.App.1978); *Keaton v. Kroger Co.*, 143 Ga.App. 23, 237 S.E.2d 443 (1977); *Miller v. Moran*, 96 Ill.App.3d 596, 52 Ill.Dec. 183, 421 N.E.2d 1046 (1981); *Gariup Constr. Co. Inc. v. Foster*, 519 N.E.2d 1224 (Ind.1988); *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985); *Holmquist v. Miller*, 367 N.W.2d 468 (Minn.1985); *Runge v. Watts*, 180 Mont. 91, 589 P.2d 145 (1979), *overruled on other grounds sub nom. Nehring v. LaCounte*, 219 Mont. 462, 712 P.2d 1329 (1986); *Hamm v. Carson City Nuggett, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969); *Paul v. Hogan*, 56 A.D.2d 723, 392 N.Y.S.2d 766 (1977); *Thoring v. Bottonsek*, 350 N.W.2d 586 (N.D. 1984); *Johnson v. Paige*, 47 Or.App. 1177, 615 P.2d 1185 (1980); *Klein v. Raysinger*, 504 Pa. 141, 470 A.2d 507 (1983); *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 345 S.E.2d 508 (1986); *Tarwater v. Atlantic Co.*, 176 Tenn. 510, 144 S.W.2d 746 (1940); *Hulse v. Driver*, 11 Wash.App. 509, 524 P.2d 255 (1974).

*ertson,* a new negligence cause of action was recognized when passengers of a vehicle who were consuming alcohol and smoking marijuana not only provided the substances to the driver of the car, but encouraged him to use the substances even though he was visibly intoxicated. The driver ultimately lost control of the vehicle colliding head on with another vehicle while attempting to pass. The driver of the other vehicle was killed. We held that

> [a] passenger may be found liable for injuries to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met: (1) the driver was operating his vehicle under the influence of alcohol or drugs which proximately caused the accident resulting in the third party's injuries, and (2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment.

177 W.Va. at 600, 355 S.E.2d at 389.

Just as this Court recognized liability of passengers to third parties in *Price,* the Supreme Court of New Jersey in the *Kelly* case found a new cause of action when that court held that

> a host who serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication.

*Kelly,* 476 A.2d at 1224.

In *Kelly,* however, there was a far more egregious set of facts. There the defendant, Gwinnell, after driving his co-defendant Zak home, spent some time at Zak's residence where he was served and consumed alcohol. While Zak and Zak's wife stated that Gwinnell had consumed two or three drinks of scotch on the rocks, Kelly's expert testified that based on Gwinnell's blood alcohol level,[6] he had to have consumed the equivalent of thirteen drinks. Further the expert testified that Gwinnell must have been showing signs of unmistak-

able intoxication. Zak then walked Gwinnell to his car and Gwinnell was subsequently involved in a head-on collision causing serious injury to plaintiff. *Id.* at 1220.

The New Jersey Court in imposing liability reasoned that "[u]nder the facts here defendant provided his guest with liquor, knowing that thereafter the guest would have to drive in order to get home.... [O]ne could reasonably conclude that the Zaks must have known that their provision of liquor was causing Gwinnell to become drunk, yet they continued to serve him even after he was visibly intoxicated." *Id.* at 1221–22.

■ We, however, refrain from creating a new cause of action which would hold the social host liable to third parties as the New Jersey Court did. The reasons for our decision are twofold. First, at common law, the general rule was that

> 'no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it.'

*Ely v. Murphy,* 207 Conn. 88, 540 A.2d 54, 56–57 (1988) (quoting *Nolan v. Morelli,* 154 Conn. 432, 436–37, 226 A.2d 383, 386 (1967) and citing 45 Am.Jur.2d. *Intoxicating Liquors* §§ 553–55 (1969); 48[A] C.J.S. *Intoxicating Liquors* § 430 (1981); Annotation, *Right of Action at Common Law for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit–Forming Drugs to Another,* 75 A.L.R.2d 833 (1961)); *see generally,* Comment, *Common Law Negligence Theory of Social Host Liability for Serv-*

---

**6.** At the time of the accident, Gwinnell's blood     alcohol was 0.286%. *Kelly,* 476 A.2d at 1220.

*ing Alcohol to Obviously Intoxicated Guests*, 26 B.C.L.Rev. 1249 (1985).

■ We can find no good reason for not following the common law in this case. As previously stated, the facts before the New Jersey Court when it created the cause of action allowing social host liability in *Kelly* were certainly far more aggravated than the facts before the Court now. The provision of alcohol by host to guest was a one-on-one situation with evidence indicating that the guest was noticeably intoxicated yet the host permitted the guest to continue imbibing knowing that the guest was going to drive. Under the facts of the case before us, McCutcheon went to the party hosted by the defendants for a number of guests and served himself intoxicating beverages. While Cline, an officer in most of the companies involved,[7] did at some point notice that McCutcheon was intoxicated and therefore asked McCutcheon twice to wait for a ride home, it was McCutcheon who left the party on his own volition. There is no indication that anyone, including Cline, forced or even actively encouraged McCutcheon to imbibe, but rather he did so voluntarily. The facts simply do not support a finding that any of the defendants in any way were engaged in the affirmative conduct of serving alcohol to McCutcheon or actively encouraging its consumption. Such affirmative conduct is required in order for the standards for liability set forth in *Price*[8] to apply.

Second, courts which have refused to extend liability to the social host absent legislative enactment have based their decisions on persuasive public policy rationale:

> First, the commercial proprietor has a proprietary interest and profit motive and should be expected to exercise greater supervision than the non-commercial social setting. Second, the person in the business of selling and serving alcohol is usually better organized to control patrons and has the financial wherewithal to do so. Third, by virtue of experience a commercial proprietor is more familiar with his customers and their habits and capacities. Fourth, since the ratification of the Twenty-first Amendment to the United States Constitution virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature and any policy modifications which are designed to encompass the potential liability of social providers of intoxicating beverages should be left to the sound discretion of the legislature.

*Keckonen v. Robles*, 146 Ariz. 268, 270, 705 P.2d 945, 947 (1985); *see Settlemyer v. Wilmington Veterans Post No. 49, American Legion, Inc.*, 11 Ohio St.3d 123, 127, 464 N.E.2d 521, 524 (1984); *see also Edgar v. Kajet*, 84 Misc.2d 100, 375 N.Y.S.2d 548, 551–52 (1975), *superseded by statute as stated in D'Amico v. Christie*, 71 N.Y.2d 76, 518 N.E.2d 896, 524 N.Y.S.2d 1 (1987); *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 345 S.E.2d 508, 510 (1986).

We share these policy concerns and refrain from creating new law in an area in which the legislature is better able to assess the public sentiment and enunciate public policy. *See, Wright v. Hanley*, 182 W.Va. 334, 336, 387 S.E.2d 801, 803 (1989).

Therefore, this court holds that absent a basis in either common law principles of negligence or statutory enactment, there is generally no liability on the part of the social host who gratuitously furnishes alcohol to a guest when an injury to an innocent third party occurs as a result of the guest's intoxication.

## EMPLOYER LIABILITY

■ The second certified question before this Court involves whether an employer who gratuitously serves liquor to an adult employee at an employer sponsored party and subsequently, due to the employee's incapacitation, exercises control over the employee, has a duty to prevent the employee from operating a motor vehicle which could cause an unreasonable risk of harm to others. While the plaintiffs assert

---

7. Cline's son was also married to McCutcheon's daughter.

8. *See* Syl.Pt. 10, *Price*, 177 W.Va. at 593, 355 S.E.2d at 382.

that such a duty should be imposed, the defendants contend that an employer who gratuitously serves alcoholic beverages to an adult employee at an employer sponsored party should not be treated differently than a social host serving intoxicating liquor to a guest.

In support of their argument imposing a duty, the plaintiffs rely heavily on our holding in *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983), and the Texas Supreme Court's decision in *Otis Eng'g, Corp. v. Clark*, —— Tex. ——, 668 S.W.2d 307 (1983). As previously stated, this Court found in *Robertson* that "a duty to exercise reasonable care to prevent the threatened harm" existed where a motorist's employer required the motorist to work for over twenty-seven hours and then took the motorist to his car and told the motorist to go home without offering any alternative transportation or rest facilities. 171 W.Va. at 612, 301 S.E.2d at Syl.Pt. 2 and 568-69.

Our decision in *Robertson* was relied upon by the Texas Supreme Court when that court held that "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Otis*, 668 S.W.2d at 311.

In *Otis*, Matheson, a worker with a history of drinking on the job, worked the evening shift at Otis. A co-worker testified that on the night of the accident he knew Matheson had been drinking and informed his supervisor. The supervisor knew of Matheson's condition and the fact that other employees felt that Matheson shouldn't be working around the machinery. The supervisor suggested that Matheson go home and escorted him to his automobile in the company parking lot. The supervisor then asked Matheson if he was alright and if he could make it home, to which Matheson responded he could. Subsequently,

Matheson was involved in an automobile accident which resulted in the death of two people. *Id.* at 308.

The facts before this Court are quite dissimilar from those presented in the *Otis* case. First, the employer had no knowledge that McCutcheon had a drinking problem or a history of such a problem. Second, even though Cline recognized that McCutcheon had overindulged himself in the consumption of alcohol, Cline did not instruct McCutcheon to leave the party, but rather instructed him to stay put until either he (Cline) or his son could give him a ride home. Thus, there was a lack of affirmative conduct creating an unreasonable risk of harm to another on the part of the employer gratuitously furnishing alcohol to an employee. Furthermore, there is no evidence to indicate that the employer exercised control over an incapacitated employee sufficient to create a duty on the employer, and even if such affirmative conduct can be said to have existed, it was in the nature of an attempt to minimize the risk of harm to third persons. Therefore, we refuse to find the employer liable under the facts of this case.[9] In reaching this holding, we equate the imposition of liability on the employer in this case to the imposition of liability on a social host as previously discussed and conclude that no liability exists under the facts presently before the Court.

This case is remanded to the Circuit Court of Nicholas County for further proceedings consistent with this opinion. Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered.

---

**9.** We limit our holding in this case on the issue of employer liability specifically to the facts presented before us. We leave unresolved the issue of liability where it can be shown that the employer engaged in affirmative conduct as was shown in both the *Robertson* and *Otis* cases.