**Brett BEARD and Dorothy Beard, Appellants,**

v.

**Royce GRAFF, Debra Lynn Graff, Bobby Hausmon, Betty Hausmon, and Houston Edward Moos, Appellees.**

**No. 04–89–00006–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 7, 1990.

Rehearing Denied Dec. 19, 1990.

Jim Perkins, Catherine M. Stone, Watkins & Brock, San Antonio, for appellants.

George G. Brin, Brin & Brin, San Antonio, Kerby Johnson, Plunkett, Gibson & Allen, San Antonio, for appellees.

Before CADENA, C.J., and REEVES, BUTTS, CHAPA, PEEPLES, BIERY and CARR, JJ., en banc.

## ON APPELLANT'S MOTION FOR REHEARING

CARR, Justice.

The appellants' motion for rehearing is granted and the following En Banc opinion is substituted for the panel opinion of October 31, 1989, as the opinion of this court.

This is an appeal from a judgment of dismissal in a negligence suit which presents us with an issue of first impres-

sion. The issue presented is whether, in any situation, a cause of action exists which imposes a duty on a social host to stop serving alcoholic beverages to an intoxicated guest who the host knows is intoxicated and also knows will thereafter operate a motor vehicle while intoxicated. Specifically, this court is asked to decide whether a social host owes a duty of care to innocent *third parties* of the general and motoring public who are injured by the acts of an intoxicated guest because of his intoxication while driving a motor vehicle.

 Negligence, a common law doctrine, consists of three essential elements—a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). Duty is the threshold issue. An individual seeking to recover must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Abalos v. Oil Dev. Co.,* 544 S.W.2d 627, 631 (Tex.1976). Therefore, the initial question before this court is whether appellees owe such a duty to appellants. For the reasons set out in this opinion, we answer the issue in the affirmative.

Appellants, Brett Beard and his mother, Dorothy Beard, sued two couples, Royce and Debra Lynn Graff and Bobby and Betty Hausmon, for damages arising from personal injuries sustained by Brett Beard in a vehicular accident caused by the alleged negligence of Houston Edward Moos. Beard alleged that Moos was operating his vehicle on a public street while intoxicated. The negligence action against Moos has been severed from the suit against the appellees.

In this suit against appellees, Beard alleged the appellees were negligent in: serving alcoholic beverages to Moos when they knew or should have known of Moos' intoxicated condition and that he would be operating a motor vehicle; allowing Moos to operate the vehicle when they knew or should have known of his intoxicated condition; providing the liquor to him; providing Moos with liquor when they knew or

should have known that Moos would consume an intoxicating amount such that he would become intoxicated, and when they knew or should have known that his intoxicated condition would result in injury to a third person (Beard). Beard seeks to recover damages from appellees, the "social hosts" who served intoxicating liquor to Moos, the person with whom appellant was involved in a vehicular accident on a public street.

The trial court sustained appellees' special exceptions and dismissed the suit for failure to state a cause of action. In one point of error, Beard claims the trial court's dismissal was error. We agree and thus reverse and remand this cause.

From our research on the issue presented us, whether a social host owes a duty of care to innocent *third parties* of the general and motoring public who are injured by the acts of an intoxicated guest because of his intoxication while driving a motor vehicle, we find neither precedential authority in Texas nor persuasive authority in the majority position of our sister states.

First, there is nothing in Texas law to preclude a finding of social host liability *under the circumstances of this case.*[1] Appellees' reliance on *Walker v. Children's Services, Inc.*, 751 S.W.2d 717 (Tex. App.—Amarillo 1988, writ denied), as precedent for the instant case is misplaced for the reason that the facts of the *Walker* case are different from the facts in the present case. In *Walker*, the court stated:

> [t]he question presented is whether a person who injures *himself* while driving an automobile under the influence of intoxicants may recover in tort from the individual who furnished him intoxicants in a social setting. We answer the question in the *negative.*

*Walker v. Children's Services, Inc.*, 751 S.W.2d at 718 (emphasis added). In ad-

dressing the threshold duty issue, the *Walker* court poses the question to itself:

> Does a cause of action exist in Texas which imposes a duty on social hosts not to serve liquor to guests who are obviously intoxicated in order to prevent them from harming themselves *or others?*

*Id.* (emphasis added). The *Walker* court's language reference to "or others" was not before the court and is dicta only. Furthermore, the social guest and injured party being one and the same in *Walker*, the reference to "or others" (in the context of the *Walker* court denying a civil remedy to the injured social guest himself) is superfluous because in the situation where a social guest injures "others," any civil remedy would be sought by the injured party referenced in *Walker's* "or others" language and not by the negligent social guest. Here, the injury is to innocent *third parties.* Since the *Walker* facts involve only injury to the intoxicated social guest himself, *Walker's* holding is so limited. In any event, we do not find the *Walker* holding that applies to the social guest who injures himself as a result of his own intoxication, persuasive in regard to the issue of innocent third parties who are victims of drunken driving because the public (i.e., innocent third parties) requires greater protection by available remedy than the drunken driver himself.

Second, the common law, as declared by the courts of the several states, is the rule of decision in this State (and has been so by statute since January 20, 1840[2]), *Houston Chronicle Pub. Co. v. Bergman*, 128 S.W.2d 114, 116 (Tex.Civ.App.—Galveston 1939, writ dism'd judgmnt cor.), and we find that the common law of the other states is conflicting, presenting us with two lines of cases between which we must choose. Research reveals that a cause of

---

**1.** In *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex.1987), the Supreme Court established a cause of action in Texas against an alcoholic beverage licensee who serves alcohol to patrons the licensee knows or should know are intoxicated. However, the court expressly stated that "[t]he duty, *if any*, of one who dispenses or *serves liquor* gratuitously, in absence of a li-

cense or permit, is not involved in this appeal." *Id.* at 309 (emphasis added).

**2.** Congressional Act of Jan. 20, 1840, 2 H. Gammel, Laws of Texas, 177 (1840) (codified at TEX.CIV.PRAC. & REM.CODE ANN. § 5.001 (Vernon 1986)).

action in negligence in favor of an injured third party has been recognized by courts in other jurisdictions against a social host serving alcoholic beverages to an intoxicated adult: California, Connecticut, Georgia, Iowa, Massachusetts, New Jersey and Washington.[3] While other jurisdictions have considered the issue of social host liability and have been unwilling to extend liability to a social host who has served intoxicants to adult guests,[4] they have generally done so on the basis that imposition of this new form of liability is "such a radical departure from prior law," with such a substantial impact on the average citizen and on everyday social and family affairs, that the issue is best left to legislative determination. However, the present condition of Texas law on the subject being yet undecided, we fail to see a "radical departure from prior law" in Texas. In addition, in our view, the rights of innocent third parties of the general and motoring public who are annually injured in our state by the acts of intoxicated motorists far outweigh any resulting impact on society from the imposition of liability on the social host as provided herein. For the reasons set forth in this opinion, we are persuaded to follow the position favored by the minority of states.

In our opinion, the imposition of a social host duty in Texas, in the context of the facts of this case, is appropriate for several reasons.

### Function of the Judiciary

We do not agree that the issue before us involving the injury to innocent third parties within the context of the facts of this case cannot be addressed and resolved by us without evidence of legislative policy, as expressed in *Walker*, 751 S.W.2d at 720, because the determination of the scope of duty in negligence cases has traditionally been a function of the judiciary, *El Chico*, 732 S.W.2d at 314; our courts have consistently made changes in the common law of torts as the need arose in a changing society, *id.* at 311; and, the judiciary has decided many significant issues without any prior legislative study. In fact, a judicial determination of the existence of a social host duty in the context of the facts of this case is within the competence of the judiciary and is in harmony with the strong legislative policy against drunken driving and for enforcement of our traffic laws. In any event, if the legislature differs with us on

**3.** *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 577 P.2d 669, 145 Cal.Rptr. 534 (1978); *Boehm v. Kish*, 201 Conn. 385, 517 A.2d 624 (1986) (will impose social host liability where there is wanton and reckless misconduct); *Sutter v. Hutchings*, 254 Ga. 194, 327 S.E.2d 716 (1985) (a minor or noticeably intoxicated person); *Divecchio v. Mead Corp.*, 184 Ga.App. 447, 361 S.E.2d 850 (1987); *Clark v. Minks*, 364 N.W.2d 226 (Iowa 1985); *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. 152, 496 N.E.2d 141 (1986); *Dhimos v. Cormier*, 400 Mass. 504, 509 N.E.2d 1199 (1987); *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984); *Halligan v. Pupo*, 37 Wash.App. 84, 678 P.2d 1295 (1984). Note: (1) that the legislatures of both California and Iowa, since the pertinent holdings in their respective states, have exercised their prerogatives and expressly abrogated social host liability. *See Cory v. Shierloh*, 29 Cal.3d 430, 629 P.2d 8, 174 Cal.Rptr. 500 (1981); *Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807 (Iowa 1987) and (2) the Washington Supreme Court in *Burkhart v. Harrod*, 110 Wash.2d 381, 755 P.2d 759 (1988) rejected social host liability after the 1984 *Halligan* decision.

**4.** *Cartwright v. Hyatt Corp.*, 460 F.Supp. 80 (D.C. 1978); *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972); *DiOssi v. Maroney*, 548 A.2d 1361 (Del. 1988); *Beeson v. Cadillac Corp.*, 506 So.2d 999 (Ala.1987); *Bankson v. Brennan*, 507 So.2d 1385 (Fla.1987); *Miller v. Moran*, 96 Ill.App.3d 596, 52 Ill.Dec. 183, 421 N.E.2d 1046 (1981); *Behnke v. Pierson*, 21 Mich.App. 219, 175 N.W.2d 303 (1970); *Cole v. City of Spring Lake Park*, 314 N.W.2d 836 (Minn.1982); *Boutwell v. Sullivan*, 469 So.2d 526 (Miss.1985); *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547 (Mo. 1987); *Runge v. Watts*, 180 Mont. 91, 589 P.2d 145 (1979), *overruled on other grounds, Nehring v. LaCounte*, 219 Mont. 462, 712 P.2d 1329 (1986); *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976); *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969); *Schirmer v. Yost*, 60 A.D.2d 789, 400 N.Y.S.2d 655 (1977); *Gressman v. McClain*, 40 Ohio St.3d 359, 533 N.E.2d 732 (1988) (will not impose social host liability in absence of a statutory violation); *Klein v. Raysinger*, 504 Pa. 141, 470 A.2d 507 (1983); *Tarwater v. Atlantic Co.*, 176 Tenn. 510, 144 S.W. 746 (1940); *Olsen v. Copeland*, 90 Wis.2d 483, 280 N.W.2d 178 (1979), *overruled on other grounds, Sorensen by Kerscher v. Jarvis*, 119 Wis.2d 627, 350 N.W.2d 108 (1984).

an issue of this kind, it is apparent it has a clear remedy.

### Harmony with Public Policy and Competence of the Judiciary

At a time when the adverse effects of intoxicants on our society are in the very forefront of our local, state, and national public agenda and are accompanied by a public outcry for relief from those adverse effects, as evidenced by such private organizational efforts as Mothers Against Drunk Drivers and other such like organizations, we believe that a civil remedy in the form of an imposition of a social host duty in the context of the facts of this case is now needed, is supportive of a desirable public policy and is within the competence of the judiciary.

In *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219, 1222–25 (1984), the Supreme Court of New Jersey imposes a social host duty to third parties and, in powerful and persuasive language, addresses these policy considerations for judicial involvement in the following manner:

> Unlike those cases in which the definition of desirable policy is the subject of intense controversy, here the imposition of a duty is both consistent with and supportive of a social goal—the reduction of drunken driving—that is practically unanimously accepted by society.
>
> . . . .
>
> We ... emphasize that the liability proceeds from the duty of care that accompanies control of the liquor supply. Whatever the motive behind making alcohol available to those who will subsequently drive, the provider has a duty to the public not to create foreseeable, unreasonable risks by this activity.
>
> We therefore hold that a host who serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication. We impose this duty on the host to the third party because we believe that the policy considerations served by its imposition far outweigh those asserted in opposition. While we recognize the concern that our ruling will interfere with accepted standards of social behavior; will intrude on and somewhat diminish the enjoyment, relaxation, and camaraderie that accompany social gatherings at which alcohol is served; and that such gatherings and social relationships are not simply tangential benefits of a civilized society but are regarded by many as important, we believe that the added assurance of just compensation to the victims of drunken driving as well as the added deterrent effect of the rule on such driving outweigh the importance of those other values. Indeed, we believe that given society's extreme concern about drunken driving, any change in social behavior resulting from the rule will be regarded ultimately as neutral at the very least, and not as a change for the worse; but that in any event if there be a loss, it is well worth the gain.
>
> The liability we impose here is analogous to that traditionally imposed on owners of vehicles who lend their cars to persons they know to be intoxicated.[5] (Citations omitted.) If, by lending a car to a drunk, a host becomes liable to third parties injured by the drunken driver's negligence, the same liability should extend to a host who furnishes liquor to a visibly drunken guest who he knows will thereafter drive away.
>
> Some fear has been expressed that the extent of the potential liability may be disproportionate to the fault of the host. A social judgment is therein implied to the effect that society does not regard as particularly serious the host's actions in causing his guests to become drunk, even though he knows they will thereafter be driving their cars. We seriously question that value judgment; indeed,

---

5. Texas law also imposes liability for negligent entrustment. *Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595 (Tex.1987).

we do not believe that the liability is disproportionate when the host's actions, so relatively easily corrected, may result in serious injury or death.

The New Jersey court explains that:

> [i]n most cases the justice of imposing such a duty is so clear that the cause of action in negligence is assumed to exist simply on the basis of the actor's creation of an unreasonable risk of foreseeable harm resulting in injury. In fact, however, more is needed, "more" being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care. (Citations omitted.) [T]his Court [has] explained that "whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." (Citations omitted.)

> When the court determines that a duty exists and liability will be extended, it draws judicial lines based on fairness and policy. In a society where thousands of deaths are caused each year by drunken drivers, where the damage caused by such deaths is regarded increasingly as intolerable, where liquor licensees are prohibited from serving intoxicated adults, and where long-standing criminal sanctions against drunken driving have recently been significantly strengthened ... the imposition of such a duty by the judiciary seems both fair and fully in accord with the State's policy.

*Id.* 476 A.2d at 1222.

Texas policy, like that of other states, is to prohibit drunken driving. *See* TEX. REV.CIV.STAT.ANN. art. 67011–1 (Vernon Supp.1990) (a person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place). And it seems evident that the purpose of this policy is to protect the people who are using a public place, a class to which appellant belongs. The offense of driving while intoxicated is composed of two elements: (1) intoxication and (2) driving a motor vehicle in a public place while in such a condition. In view of appellee's alleged knowledge that the guest would be operating a motor vehicle while intoxicated, we see no difference between appellees (hosts) knowingly serving liquor to an intoxicated guest under the facts of this case and appellees serving alcoholic beverages to an intoxicated driver in the motor vehicle while the intoxicated driver was actually driving the motor vehicle, which even the dissenters would refuse to defend.

In light of the universal knowledge of the potential dangers of a person driving a motor vehicle while intoxicated, which gives social hosts the practical ability to foresee the potential harm and consequences that reasonably result from an intoxicated motorist, we hold that when the host has the exclusive control [6] of the alcohol supply and knowingly serves the guest from that supply when the host knows the guest is intoxicated and also knows will be operating a motor vehicle while intoxicated is sufficient to attach civil liability to the host for injuries to innocent third parties.

### *Conclusion*

■ Since this case comes to our court for purposes of ruling on the trial court's sustaining of special exceptions and dismissal of appellants' suit for failure to state a cause of action, this court must accept as true all of appellants' pleaded allegations and evidence, indulging in every reasonable inference and resolving all doubts in appellant's favor. *El Chico*, 732 S.W.2d at 315; *Blanton v. Morgan*, 681 S.W.2d 876, 877 (Tex.App.—El Paso 1984, writ ref'd n.r.e.).

In their trial pleadings, appellants alleged that the accident made the basis of this suit and their damages were caused by the negligence of Houston Edward Moos, who was operating his vehicle while under the influence of intoxicating alcoholic beverages at the time of the accident. Appellants further alleged that appellees were negligent in serving intoxicating alcoholic

---

**6.** As used in this opinion, "exclusive control" [of the alcohol supply] means that right of control greater than that of the guest user.

beverages to Houston Edward Moos when they knew or should have known that Moos was intoxicated and that he would subsequently operate a motor vehicle while intoxicated.

We hold that the trial court erred in sustaining appellee's special exceptions and dismissing appellants' suit for failure to state a cause of action because appellants have stated a cause of action under the allegations in appellants' pleadings to the extent that appellants' pleadings allege: (1) an injury to a third party, (2) that appellees had exclusive control of the alcohol supply, and (3) that appellees knowingly served the guest from that supply when appellees *actually knew* the guest was intoxicated and *actually knew* that he would thereafter operate a motor vehicle in a public place while intoxicated.

For the reasons stated, we grant appellant's motion for rehearing; reverse the trial court's sustaining of appellee's special exceptions and dismissal order; and, remand this case to the trial court to resolve the fact questions alleged in appellants' pleadings that are in accordance with this opinion.

BUTTS, Justice, dissenting.

I disagree that the second amended petition of plaintiffs states a cause of action in Texas. Accordingly, I dissent to the disposition rendered in the majority opinion.

This is an appeal from a judgment of dismissal. The suit alleged that Beard suffered personal injuries when he was struck by Moos' pickup and that Moos was driving while intoxicated. Beard seeks to recover damages from the two couples declared to be the social hosts who served intoxicating liquor to Moos. The question is whether the plaintiffs have asserted a cause of action recognized in Texas: is there social host liability to a third party for the acts of an intoxicated adult guest?

It is the law in Texas that an injured third party has a valid claim against the vendor of the intoxicating liquor sold to the DWI defendant. TEX.ALCO.BEV.CODE ANN. §§ 2.01–2.03 (Vernon Supp.1990). This is the "dram shop" act which recog-

nizes the liability of licensed providers if the allegations of the petition and the proof meet the standard enunciated in the Act. Enacted and in effect when *El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987) was published, the statutory cause of action superseded the common law rule pronounced in *El Chico.*

The *El Chico* court expanded liability in this area by adopting a dram shop doctrine for commercial suppliers as a matter of common law. The legislature, in the meantime, agreed that the provider of liquors, under a license or permit, could be made the object of a *statutory cause of action* (1) when it was apparent to the provider at the time the provision occurred, (2) that the individual was obviously intoxicated (3) to the extent that he presented a clear danger to himself and others, and, (4) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered. TEX.ALCO.BEV.CODE ANN. § 2.02(a), (b)(1)(2) (Vernon 1990). Section 2.03 of the Act provides:

> **Statutory Remedy.** The liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. *This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter.* This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older. (emphasis added)

TEX.ALCO.BEV.CODE ANN. § 2.03 (Vernon Supp.1990). Another express provision in the same area is found in section 2.02(a), of the Alcoholic Beverage Code which states that this chapter does not affect the right of any person to bring a common law action against the intoxicated person allegedly causing the injuries. There is no mention of a common law action against a social host who furnished the intoxicants. It is stated in the 1988 Supplement to PROSSER & KEETON, THE LAW OF TORTS § 53 *Limited Duty* (5th ed. 1984),

that approximately 20 states have dram shop acts, some of which limit the damages recoverable. It is noteworthy that the Act in Texas specifies the predicates which must be alleged and proved in order to state a cause of action and to hold the commercial provider liable.

PROSSER & KEETON recollects that traditional common law, based upon notions of individual responsibility and social policy, held the supplier of alcohol free of liability, on the ground that the person who drank the liquor, not the person who supplied it, was the proximate cause of the harm. Although statutory dram shop liability, as well as common law liability against commercial providers of liquor, is now generally recognized by most jurisdictions, that is not the case when it comes to imposing liability in negligence on social hosts for supplying liquor to their guests whose resulting intoxication causes harm. *See* PROSSER & KEETON at § 53. (Supp.1988). For example, the California Supreme Court in *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978) adopted a common law negligence liability rule against social hosts. That state's legislature immediately abrogated the rule. CAL.CIV.CODE § 1714 (West 1978). The California Act states in part that it is the legislature's intent to reinstate the prior judicial interpretation of this section as it relates to proximate cause—that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather it is the consumption that is the proximate cause of injuries. The California Act also specifically eliminates the social host from liability. CAL. CIV.CODE § 1714(c).

The Iowa legislature replaced its dram shop statute, expressly overruling *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985), which held the social host liable for a death caused by an intoxicated adult guest. That Act provides, in part:

b. The general assembly declares that this subsection shall be interpreted so that the holding of *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985) is abrogated in favor of prior judicial interpretations finding the consumption of alcoholic beverages, wine, or beer rather than the serving of alcoholic beverages, wine, or beer as the proximate cause of injury inflicted upon another by an intoxicated person.

IOWA CODE ANN. § 123.49 (West 1987). Section 123.92 of the same Act expressly limits liability to vendors.

The state of Minnesota amended its statute to eliminate social host liability. *Holmquist v. Miller*, 367 N.W.2d 468, 470 (Minn. 1985). *See* MINN.STAT.ANN. § 340A.801 (West Supp.1988). Other states have provided for limited liability of social hosts. New Mexico requires that the alcoholic beverages be provided to the social guest recklessly in disregard of the rights of others. *See* N.M.STAT.ANN. § 41–11–1(E) (1986). Oregon requires that the liquor be provided to the guest while he was *visibly* intoxicated, and the plaintiff must prove by *clear and convincing evidence* that the guest was served alcoholic beverages while visibly intoxicated. *See* OR.REV.STAT. § 30.950 (1987).

The New Jersey Supreme Court's decision in *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984) was the first in which a state supreme court imposed social host liability for injuries caused by an intoxicated adult guest that the state legislature did not subsequently overrule. *See* Comment, *The Continuing Search for Solutions to the Drinking Driver Tragedy and the Problem of Social Host Liability*, 82 NW. U.L.REV. 403, 413 (1988). The *Kelly v. Gwinnell* court limited its holding to affect only the host who had directly served his guest and who did so even though he knew the guest was intoxicated and would soon be driving. It is significant that in the present case, even though relying heavily on *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984), neither the majority opinion nor the appellants so limit their use of *Kelly v. Gwinnell* to the specific social host who *directly served the intoxicants, knowing the guest was intoxicated and would soon be driving.* The New Jersey court emphasized that it was passing only on the duty of a social host who "directly

serves the guest and continues to do so even after the guest is visibly intoxicated." *Id.* at 556, 476 A.2d 1219. In fact, the manner in which that case is presently applied by the majority opinion, without any limitations, would authorize imposition of liability against all social hosts, including spouses and co-host friends, although only one of them has served intoxicants to a guest who later injures a third party. *Kelly v. Gwinnell* did not sweep with so broad a brush.

A few states have recognized a cause of action against a social host when the intoxicated person served is a minor, usually basing the court's holding on specific statutes which forbid sale of alcoholic beverages to minors, as well as those which prohibit serving or furnishing intoxicants to a minor as a *per se* violation of the law. We do not have that circumstance in this case.

The noted article recites that since the decision in *Kelly v. Gwinnell,* courts in nine states have refused to recognize a cause of action based on social host liability. They are Arizona, Florida, Maryland, Minnesota, Mississippi, Missouri, New York, and South Carolina. 82 NW.U.L. REV. at 418 (all citations listed in footnote). There are three rationales justifying rejection of social host liability in negligence reflected in those states' opinions: that criminal liquor control statutes regulate only commercial suppliers of alcohol, and therefore do not establish a standard of conduct for social hosts; that the traditional common law rule—the serving of liquor is not the proximate cause of injury, rather the consumption is the proximate cause—should remain in place unless the legislature changes it; and, that the state dram shop act is the exclusive remedy for third parties' alcohol-related injuries and does not apply to social hosts.

Although the facts of *Walker v. Children's Services, Inc.,* 751 S.W.2d 717 (Tex. App.—Amarillo 1988, writ denied) involved the intoxicated driver's cause of action against his social host, that court nevertheless addressed the liability question now before this court:

We must now examine whether Texas should join the minority of jurisdictions and extend the liability found in *El Chico* to a social host. We conclude that the duty should not be extended.

*Id.* at 720. The court also stated the great weight of authority supports the position that a social host should not be held liable to his guests *nor to third parties whom his guests may injure. Id.* Contrary to the majority's assertion that the statements in the opinion concerning third party injuries are dicta, it is noteworthy that the court specifically included and decided that issue by stating that one of the two questions on appeal in *Walker* was: "Does a cause of action exist in Texas which imposes a duty on social hosts not to serve liquor to guests who are obviously intoxicated in order to prevent them from harming themselves or others?" *Id.* at 718.

It is reasonable to conclude, as did the *Walker* court, that in *El Chico* the Supreme Court found significant legislative policy in existing Alcoholic Beverage Code regulations to impart knowledge of foreseeable risk on the commercial provider of the alcohol, and the court thus could fashion a civil remedy for negligently creating that risk. The *Walker* court concluded there was nothing to indicate a legislative policy with regard to social hosts and declined to extend a civil remedy to social guests who injure themselves or others. *Walker v. Children's Services, Inc.,* 751 S.W.2d at 720. Therefore, it is important to the jurisprudence of this state and to the disposition of the present case that the Supreme Court of Texas did tacitly approve the reasoning in *Walker* regarding the liability of social hosts either to the guest himself or to an injured third party by denying the application for writ of error.

While some states are wholly governed by the common law, Texas is not one of them. It is a state governed by statutes and codes almost to the exclusion of common law which has not been codified. The Texas Legislature long ago actively entered the particular field of alcoholic beverages regulation. It has constantly updated that Code, responding to societal needs and changes. It has clearly indicated its ability

to deal with such a policy question as the one before this court. The courts of Texas do not write on "a clean slate" in this field as would a court in a wholly common law jurisdiction. The issue of civil liability for a social host has broad ramifications with many conflicting interests and concerns of society involved. The judiciary is not equipped to receive public input as is our legislature, with its public committee hearings, and to resolve broad public policy questions based on a societal consensus. *See Bankston v. Brennan,* 507 So.2d 1385, 1387 (Fla.1987). The question before this court has many ramifications affecting society which have not been addressed and cannot be resolved by the majority holding. It is one that is properly within the realm of the legislature to resolve. *See Burkhart v. Harrod,* 110 Wash.2d 381, 755 P.2d 759, 761–63 (1988) (comprehensive discussion of the reasons why social host liability is a subject best left to the body equipped to deal with it—the legislature). As noted in *Burkhart,* the decision to defer the issue of social host liability to the legislature is fully supported by precedent. *Id.* at 762 (citations omitted).

Therefore I respectfully dissent. I would hold the second amended petition does not state a recognized cause of action in Texas and affirm the judgment of the trial court.

---

1. The statute reads in its entirety as follows:
 **CHAPTER 2. CIVIL LIABILITIES FOR SERVING BEVERAGES**
 **§ 2.01. Definitions**
 In this chapter:
 (1) "Provider" means a person who *sells or serves* an alcoholic beverage under authority of a license or permit issued under the terms of this code or who *otherwise sells* an alcoholic beverage to an individual.
 (2) "Provision" includes, but is not limited to, the *sale or service* of an alcoholic beverage.
 **§ 2.02. Causes of Action**
 (a) This chapter does not affect the right of any person to bring a common law cause of action against any individual whose consumption of an alcoholic beverage allegedly resulted in causing the person bringing the suit to suffer personal injury or property damage.
 (b) Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter and may be made the basis of a revocation proceeding under Section 6.01(b) of this code upon proof that:

PEEPLES, Justice, dissenting.

This case requires us to decide whether a court should create a common-law cause of action in a field that the legislature has pervasively regulated. The majority holds that a private individual can be liable for serving alcohol to a guest who the server knows is intoxicated and will drive a car and who ultimately injures a third person. That holding creates liability that the legislature consciously declined to create (and arguably prohibited) when it enacted the Texas dram shop law in 1987. I dissent.

The majority does not even mention chapter two of the Alcoholic Beverage Code, which is entitled "Civil Liabilities for Serving Beverages," and which arguably precludes the cause of action created today. That statute creates a cause of action in tort against an alcohol "provider"—defined as a licensee who sells or serves, or anyone who sells, an alcoholic beverage to an individual—if it was "apparent" that the drinker was "obviously intoxicated." [1]

Section 2.03 makes clear that the statutory cause of action is in lieu of common law liability. The last sentence in § 2.03 says that with regard to adults chapter two is exclusive and there is no other cause of action: "This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.
**§ 2.03. Statutory Remedy**
The liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter. *This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.*
TEX.ALCO.BEV.CODE ANN. §§ 2.01–2.03 (Vernon Supp.1990) (emphasis added).

or older." If this sentence means simply that the statute is the exclusive cause of action against "providers," it is redundant because the preceding two sentences already say the same thing. In view of § 2.01(2)'s definition of "provision"—"the sale or service of an alcoholic beverage" —§ 2.03 seems to mean: "This chapter provides the exclusive cause of action for [selling or serving] an alcoholic beverage to a person 18 years of age or older."

Considering the statute's title ("Civil Liabilities for *Serving* Beverages") and its other provisions together, a very plausible interpretation is that (1) there is a statutory cause of action against two categories of people: (a) those who *sell* to an intoxicated person, and (b) those who merely *serve* such persons, but only if the server is a liquor licensee; (2) nothing in the statute precludes a civil action against anyone who sells or serves persons under 18 (whether intoxicated or not); but (3) there is no cause of action against ordinary private individuals (such as the defendants in this case) who serve adults, because the statute is the "exclusive" action against those who serve adults. Other sections of the code proscribe the *sale* of alcoholic beverages to intoxicated persons and to minors.[2]

In several states with comparable dram shop statutes, the courts have held that the legislature has occupied the field and that therefore the courts should not create a common-law cause of action. *See, e.g., Bankston v. Brennan,* 507 So.2d 1385 (Fla. 1987); *Gariup Constr. Co. v. Foster,* 519 N.E.2d 1224 (Ind.1988); *Boutwell v. Sullivan,* 469 So.2d 526 (Miss.1985); *D'Amico v. Christie,* 71 N.Y.2d 76, 518 N.E.2d 896, 524 N.Y.S.2d 1, 62 A.L.R.4th 1 (1987); *Great Central Ins. Co. v. Tobias,* 37 Ohio St.3d 127, 524 N.E.2d 168 (1988); *Garren v. Cummings & McCrady, Inc.,* 289 S.C. 348, 345 S.E.2d 508 (Ct.App.1986).

2. **§ 101.63. Sale to Certain Persons**
 (a) A person commits an offense if he knowingly sells an alcoholic beverage to an habitual drunkard or an intoxicated or insane person....
TEX.ALCO.BEV.CODE ANN. § 101.63 (Vernon 1978).

The majority places almost all its reliance on *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984), from which it quotes extensively. But *Kelly* stressed that New Jersey did not have a dram shop act and said that whenever such a statute exists, the legislature has arguably occupied the field and the courts should not create common law liability:

> [The] very existence of a Dram Shop Act constitutes a substantial argument against expansion of the legislatively-mandated liability. Very simply, when the Legislature has spoken so specifically on the subject and has chosen to make only licensees liable, arguably the Legislature did not intend to impose the same liability on hosts.

476 A.2d at 1227. In this passage the New Jersey court comes very close to saying that it would not have created liability if the legislature had enacted a dram shop law, because the enactment would mean that the legislature had chosen to go only so far, and no further. Texas, of course, has a dram shop act. Because our legislature has occupied this field and made a conscious decision not to extend liability to social hosts, I would not do so by judicial decision.

I agree that *Walker v. Children's Services, Inc.,* 751 S.W.2d 717 (Tex.App.— Amarillo 1988, writ denied), does not control this case.[3] The plaintiff in *Walker* was the drinker himself and not the third person that he injured. The court stated the question before it as "whether a person *who injures himself* while driving an automobile under the influence of intoxicants may recover in tort from the individual who furnished him intoxicants in a social setting." *Id.* at 718 (emphasis added).

§ 106.03. **Sale to Minors**
 (a) A person commits an offense if with criminal negligence he sells an alcoholic beverage to a minor....
TEX.ALCO.BEV.CODE ANN. § 106.03 (Vernon Supp.1990).

3. The supreme court left open the question of gratuitous social host liability in *El Chico Corp. v. Poole,* 732 S.W.2d 306, 309 (Tex.1987).

Having stated the question this way, the court three times used language that suggested the social host owes no duty to the drinker *or to others:*

> This appeal presents two questions. Does a cause of action exist in Texas which imposes a duty on social hosts not to serve liquor to guests who are obviously intoxicated in order to prevent them from harming themselves *or others?* ...

> . . . . .

> Therefore, the great weight of authority supports the position that a social host should not be held liable to his guests *nor to third parties* whom his guests may injure ...

> . . . . .

> [We] are not persuaded to extend a civil remedy to social guests who injure themselves *or others.*

*Id.* at 718, 720 (emphasis added). At another point in the opinion, the court stressed that the case involved the drinker himself as plaintiff and not a third person: *"Otis Engineering [Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983)]˙ does not require an employer to protect an employee from *harming himself.* In this instance, *we do not have an injured third party;* therefore, *Otis Engineering* does not apply." *Walker,* 751 S.W.2d at 719 (emphasis added).

It is true that the supreme court declined to review *Walker,* but that action does not necessarily mean that the court approved its dicta. The denial of review could mean that the result in *Walker*—that the server is not liable to the drinker who injures himself—was correct and that the court exercised its discretion not to review the case and approve or disapprove the dicta quoted above. Yet this view has its difficulties. The supreme court in a vendor liability case suggested that the vendor owes the same duty irrespective of whether the plaintiff is the drinker or a third party: "The duty is the same whether the foreseeable injury involves the drunkard himself or a third party who may be placed in peril because of the drunkard's condition." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987). And our dram shop statute seems to allow a cause of action by the drinker himself in addition to innocent third parties. Nevertheless, on balance I do not consider the *Walker* dicta controlling in the present case.

The majority cites cases from other states and then chooses to adopt the *minority* rule. But in its citation of cases, the majority fails to make fundamental distinctions—whether the host violated a *statute* or unlawfully served a *minor*—and gives the erroneous impression that it is following a sizable minority. Some courts have imposed liability because the host served an *underage* person in violation of a *statute.*[4] Others have relied on language in a *statute* that justifies civil liability when the host served an *intoxicated person.*[5] Only two states (Massachusetts and New Jersey) presently impose a duty on non-vendor social hosts in situations like the one before us, in which the person served was an adult and no statute was violated.[6] Most courts have held that there

---

4. *See, e.g., Ely v. Murphy,* 207 Conn. 88, 540 A.2d 54 (1988); *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985); *Longstreth v. Gensel,* 423 Mich. 675, 377 N.W.2d 804 (1985); *Walker v. Key,* 101 N.M. 631, 686 P.2d 973 (Ct.App.1984); *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 526 N.E.2d 798 (1988); *Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515 (1983); *Koback v. Crook,* 123 Wis.2d 259, 366 N.W.2d 857 (1985).
 *See also DiOssi v. Maroney,* 548 A.2d 1361 (Del.1988) (host who served minor is liable to persons injured by minor on host's premises).

5. *See, e.g., Divecchio v. Mead Corp.,* 184 Ga.App. 447, 361 S.E.2d 850 (Ct.App.1987) (court relied on earlier case interpreting statute that provided "no alcoholic beverage shall be sold ... given, provided, or furnished to any person who is in a

state of noticeable intoxication"); *Gariup Constr. Co. v. Foster,* 519 N.E.2d 1224 (Ind.1988) (statute prohibited serving liquor to person "in a state of intoxication"); *Gressman v. McClain,* 40 Ohio St.3d 359, 533 N.E.2d 732 (1988) (statute forbade permit holder to sell liquor to intoxicated person); *Solberg v. Johnson,* 306 Or. 484, 760 P.2d 867 (1988) (violation of statute to serve "visibly intoxicated" person).

6. *See McGuiggan v. New England Tel. & Tel. Co.,* 398 Mass. 152, 496 N.E.2d 141 (1986); *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984).
 In *Solberg v. Johnson,* 306 Or. 484, 760 P.2d 867 (1988), the court upheld liability against a tavern that had furnished alcohol to a "visibly intoxicated person" who had "a serious drinking

is no liability under these circumstances.[7] *See generally* Annotation, *Social Host's Liability for Injuries Incurred By Third Parties As a Result of Intoxicated Guest's Negligence,* 62 A.L.R.4th 16 (1988).

I do not fault the majority for adopting the minority rule simply because it is the minority rule. We should not follow the crowd blindly or try to discern and join the "trend" unless there are good reasons for doing so. But when a court joins a scant minority and departs from the common law to create a new, expansive cause of action, it should have good reasons. And it should consider the ramifications of the rule it adopts. It is here that I find the majority opinion especially lacking.

I wholeheartedly agree that drunk driving is a problem, and that society must seek more effective ways to deal with it.[8] But I doubt that the law can reduce the DWI problem by holding social hosts liable for the accidents caused by their friends who were already intoxicated when the host served them. How much deterrence will tort suits really accomplish? Tort law does compensate, but I question whether negligence suits shape the behavior of individuals to any appreciable degree. This is especially true where the social host's homeowners insurance policy will in all likelihood cover his actual and punitive damages [9] and the attorney's fees for defending the suit.[10]

problem." The court's language suggested that such liability might extend to the social host.

The majority makes the potentially misleading statement that a social host cause of action "has been recognized" in seven states. *See* text of majority at note three. But as the majority admits, the legislatures of California, Iowa, and Minnesota responded to court decisions—which rested in whole or in part on statutes—with legislation abolishing the cause of action. The Connecticut case involved a vendor, though the court did suggest in dictum that there may be ordinary social host liability when the host is guilty of wanton and reckless misconduct. The Georgia cases rest on a statute that prohibited serving alcohol to minors. The Washington case is no longer authoritative in view of *Burkhart v. Harrod,* 110 Wash.2d 381, 755 P.2d 759 (1988), which rejected social host liability.

**7.** *See, e.g., Beeson v. Scoles Cadillac Corp.,* 506 So.2d 999 (Ala.1987); *Fruit v. Schreiner,* 502 P.2d 133 (Alaska 1972); *Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (Ct.App.1985); *Cartwright v. Hyatt Corp.,* 460 F.Supp. 80 (D.C.1978); *Bankston v. Brennan,* 507 So.2d 1385 (Fla.1987); *Johnston v. KFC Nat'l Management Co.,* 71 Haw. 229, 788 P.2d 159 (1990); *Miller v. Moran,* 96 Ill.App.3d 596, 52 Ill.Dec. 183, 421 N.E.2d 1046 (1981); *Gariup Constr. Co. v. Foster,* 519 N.E.2d 1224 (Ind.1988) (extending liability to employer who served employee at party, but rejecting ordinary social host liability); *Kuykendall v. Top Notch Laminates, Inc.,* 70 Md.App. 244, 520 A.2d 1115 (Md.Ct.Spec.App.), *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987); *Childress v. Sams,* 736 S.W.2d 48 (Mo.1987); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976); *D'Amico v. Christie,* 71 N.Y.2d 76, 518 N.E.2d 896, 524 N.Y. S.2d 1, 62 A.L.R.4th 1 (1987); *Settlemyer v. Wilmington Veterans Post,* 11 Ohio St.3d 123, 464 N.E.2d 521 (1984); *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983); *Garren v. Cummings & McCrady, Inc.,* 289 S.C. 348, 345 S.E.2d 508 (Ct.App.1986); *Burkhart v. Harrod,* 110

Wash.2d 381, 755 P.2d 759 (1988); *Overbaugh v. McCutcheon,* 396 S.E.2d 153 (W.Va.1990).

**8.** The majority rests its decision almost entirely on the goal of deterring drunk driving. It does not express a desire to find additional compensation for the injured third person, but that goal is mentioned in the extensive quotation in its opinion. If greater compensation is in fact the goal, we should be candid and simply admit that we are widening the net in search of additional defendants to help compensate the injured party. As I read the majority opinion, however, it does not rest on this deep-pocket rationale.

**9.** The Texas cases have held that punitive damages are covered under insurance policies covering the "total sum" or "all sums" that are adjudged against the insured, and that such coverage is not against public policy. *See American Home Assur. Co. v. Safway Steel Prods. Co.,* 743 S.W.2d 693, 701–705 (Tex.App.—Austin 1987, writ denied); *Home Indem. Co. v. Tyler,* 522 S.W.2d 594, 596–97 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). Many states hold otherwise. *See generally* Annotation, *Liability Insurance Coverage as Extending To Liability for Punitive or Exemplary Damages,* 16 A.L. R.4th 11 (1982).

**10.** Criminal penalties for the serving host, which would not be discharged by insurance, would surely have a greater deterrent effect than a negligence action for damages. Middle class servers of drinks are accustomed to writing checks for insurance premiums. In all likelihood they will be little deterred by the prospect of simply having to write a slightly larger check, which of course would not happen until *after* they have served the drink and contributed to the accident, which is what the majority seeks to deter. In my view, the prospect of facing a criminal indictment for knowingly serving an

Even if hosts will somehow be deterred from serving the extra drink, I doubt that social host liability will reduce the number of accidents involving drunk drivers because under the majority opinion the cause of action will lie only when the driver was already intoxicated and poised to drive before he got the additional drink from the host. Eliminating the extra drink will not eliminate the driver who was drunk in the first place. I certainly recognize that a driver who is already intoxicated can be more dangerous if he has another drink and becomes even more intoxicated or stays in that condition longer. But why not make the person liable who served the marginal drink that made him intoxicated in the first place? Is there that much difference between the host who serves the *almost* intoxicated guest and puts him over the line and the host who serves the *already* intoxicated guest and puts him farther over the line? [11]

The negligent entrustment cases, referred to in the quotation cited by the majority, do not support the creation of a duty under these circumstances. The supreme court did say in *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.1987), that

already intoxicated person would be much more effective in concentrating the server's mind on his responsibilities.

**11.** On this point the majority has not addressed concerns such as those expressed in Justice Mosk's concurrence in *Coulter v. Superior Court*, 21 Cal.3d 144, 156, 577 P.2d 669, 676, 145 Cal.Rptr. 534, 541 (1978) (emphasis added):

When the inebriate thereafter causes injury to a third person, it can be argued that the negligence which proximately caused the injury resulted from his original intoxication, not from the additional liquor served after he had already become "obviously intoxicated." Thus I suggest that in order to hold liable the social provider of liquor, it is not enough to rely upon the provisions of section 25602 [the statute that prohibited the furnishing of any alcoholic beverage to any obviously intoxicated person]. The plaintiff should be compelled to prove either (1) that the social host furnished the liquor knowing that it was likely to, and that it did, produce the *original* intoxication, or (2) that the additional liquor served to one already "obviously intoxicated" *increased* or *prolonged* the existing state of intoxication and to that extent was a proximate cause of the injury.

there is an "obvious analogy" between the negligent entrustment cases and the dram shop cases. But to me there is a difference between the host who lends a car to a drunk person who would otherwise be traveling on foot and not dangerous to the motoring public, and the host who gives an additional drink to a drunk person who has a car already. Having given the drunk person a dangerous instrument, the first host is more culpable because he has made the drunk dangerous to the public much more than the second. Surely the majority (and the New Jersey court that it quotes) can see the moral distinction between one who gives a car (or a loaded gun) to a drunk person and one who gives a drink to a drunk person who already has a car (or a gun). I do not defend either, but the former has endangered the public much more.

There are several reasons why this issue should be left to the legislature, which is better able to debate and study the matter.[12] Legislatures can hold hearings and solicit public input on how far the law's liability should extend toward the social host. Courts cannot do that. In fact, judges cannot even discuss the issues meaningfully in judicial campaigns.[13] Un-

**12.** It is true that the legislature can correct our decision if a sizable enough legislative majority in each chamber wants to do so, and the governor agrees. But court decisions like this one simply shift the burden of passing legislation from those who favor social host liability to those who oppose it. The decision shifts the burden of overcoming inertia, which is especially important because in the Texas Senate a minority of one-third plus one can prevent legislation from being passed.

I reiterate that the legislature has already decided to make vendors liable, but it has not taken (and arguably has forbidden) the step that the court takes today.

**13.** The Code of Judicial Conduct provides as follows:

**Canon 7. A JUDGE SHALL REFRAIN FROM POLITICAL ACTIVITY INAPPROPRIATE TO THE JUDICIARY.**

(1) A judge or a judicial candidate is prohibited from statements that indicate an opinion on any issue that may be subject to judicial interpretation by the office which the candidate is seeking, except that a candidate may discuss the candidate's judicial philosophy in a manner which does not suggest to a reasonable person the candidate's probable decision on any particular case.

like legislatures we cannot send questionnaires to our "constituents" or otherwise hear out their views on a pending case. Nor can we publicize the fact that we are considering the issue and then assess the pros and cons that are made known in the media or in our constituent mail. The legislature can also consider whether society should attack the problem by means other than civil litigation.[14] Courts can act only through the lawsuit, a blunt and unwieldy tool that is costly as well. In addition, courts must proceed step-by-step, while a legislature can enact a statute that takes a more comprehensive, unified view.[15]

The cause of action created today is palatable to the majority only because it is thought to be narrowly confined and limited. With great confidence the opinion says that the host is liable only when he had *exclusive control* of the liquor supply and *actual knowledge* that the drinker was intoxicated and would be driving. But these limits on the cause of action will prove difficult to maintain and enforce. The whole idea of deterrence rests on the premise that the person whose behavior we want to deter—the host—will be aware of the law's sanctions. But surely some hosts, upon becoming aware of the social host cause of action, may adapt to it by structuring their affairs to avoid exclusive control of the liquor and actual knowledge of who drinks it. What will the courts do when the host gave up exclusive control and let the guests serve their own drinks? And on what principled basis will the next court decide whether to extend liability when the extra drink was consumed at a party at which all the guests contributed money and split the cost of the liquor supply? Under the majority opinion, no one is liable because the host did not have exclusive control, defined as "that right of control greater than that of the guest user."[16] But that result allows social hosts who want to avoid liability to require simply that their guests contribute to the liquor fund and serve themselves. Who is liable when the drink was served by a bartender? Will the bartender's actual knowledge be imputed to the host who hired him? And there are other questions. Will there be liability when one friend buys a drink at a bar for another, who a jury later decides was already intoxicated?

When these issues arise in future cases, it will be hard to draw principled lines. We will either have to extend liability further or confine it to the artificial lines drawn today. We are likely to conclude that we should not have started down this road in the first place.

The majority has ignored a statute that occupies the field ("Civil Liability for Serving Beverages"), adopted a rule that is followed by a lonely and unimpressive minority of two state courts, and given no real thought to the practical problems inherent in its decision. It has done this without discussion of whether social host liability will have any impact on the accident rate.

I respectfully dissent.

---

(2) A judge or judicial candidate shall not make pledges or promises of conduct in office regarding judicial duties other than the faithful and impartial performance of the duties of office....

**14.** Approaches to the deterrence problem at both state and federal levels have included [1] strengthening criminal penalties for driving while intoxicated, [2] raising the legal drinking age to twenty-one, [3] setting up roadblocks to improve the chances of catching drinking drivers, and [4] using the media to increase public awareness of the dangers of driving under the influence. Other measures include [5] lowering, from .10% to .08% or .05%, the percentage of alcohol in the bloodstream *that results* in a legal presumption of intoxication, and [6] instituting administrative procedures for getting and keeping drinking drivers off the roads.
Comment, *The Continuing Search for Solutions to the Drinking Driver Tragedy and the Problem of Social Host Liability,* 82 NW.U.L.REV. 403, 404–405 (1988) (footnotes omitted).

**15.** If the legislature chooses to make the social host liable, it can decide much better than the courts such issues as whether any sanction should be civil or criminal or both, whether any civil liability should be joint and several or only for the marginal percentage contribution to the accident, and whether punitive damages (which seek to punish and deter) could be discharged by insurance covering the person whose conduct the law seeks to punish and deter.

**16.** See majority opinion at footnote six.

BIERY, Justice, dissenting.

Although for different reasons, I also respectfully dissent.

We are presented with the specific and narrow question of whether the statutory or common law of Texas recognizes a cause of action against a social host for providing alcoholic beverages to one who is obviously intoxicated and who subsequently injures a third person. While the legislative branch and our supreme court have not directly answered the question, there is sufficient recent implicit authority from our supreme court to conclude that this new cause of action is not recognized.

Although the legislature has spoken to the issue of "dram shop" liability, it has not addressed the duty of the social host because, by definition, a "provider" under the Texas Alcoholic Beverage Code is limited to one who "sells or serves an alcoholic beverage under authority of a license or permit ..." TEX.ALCO.BEV.CODE ANN. § 2.01 (West Supp.1990). Unlike California, Iowa, Minnesota and other state legislatures, our legislature has not specifically addressed the social host issue and, therefore, has not precluded the possibility of a common law cause of action.

Looking to the existing common law, I cannot agree that a lack of proximate cause is a valid reason for precluding liability on the part of the social host. For example, we have no difficulty in finding proximate cause where a person provides a vehicle to another person in a negligent entrustment cause of action. Further, we encounter no difficulty in finding proximate cause in a case where a commercial provider of alcoholic beverage sells to an intoxicated person.

Given that our legislature has not specifically addressed the social host issue and that the traditional common law concept of proximate cause does not preclude a duty on a social host, we must then ascertain whether our State's highest court, under the principle of *stare decisis*, has provided guidance. Only two years ago the Amarillo Court of Appeals in *Walker v. Children's Services, Inc.*, 751 S.W.2d 717 (Tex. App.—Amarillo 1988, writ denied), had be-fore it the issue of a social host's duty to the person to whom alcohol is served. Broadly stating the issue, however, to include social hosts' liability to third-party victims as well, the Amarillo court concluded that the *El Chico* duty should not be extended to social hosts.

Subsequently, our supreme court, on application for writ of error, denied the application with the notation "Writ Denied." Rule 133 of the Texas Rules of Appellate Procedure provides that if the "application presents no error of law which requires reversal or *which is of such importance to the jurisprudence of the State as to require correction*, the court will deny the application with the notation 'Writ Denied.'" (Emphasis added.) Thus, our supreme court recently had before it this issue of importance to the jurisprudence of the State and implicitly concluded that the pronouncement of the Amarillo Court of Appeals need not be corrected. Analogous to an *Erie* guess in federal diversity litigation, I therefore conclude that our highest court does not recognize the cause of action asserted by the appellants herein.

Accordingly, I would affirm the judgment of the trial court.